IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FLINT COX,

    Plaintiff,

v.                                                           No. 1:18-cv-01196-JDB-jay

ERIE INSURANCE EXCHANGE,

    Defendant.

___

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
___

*INTRODUCTION*

This action was initiated on October 6, 2018, by the Plaintiff, Flint Cox, against the Defendant, Erie Insurance Exchange ("Erie"), alleging breach of contract, statutory bad faith, and violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-101, *et seq.* (the "TCPA"), in connection with the Defendant's refusal to pay for a loss to Cox's property. (Docket Entry ("D.E.") 1.) Pending before the Court is Erie's motion for partial summary judgment (D.E. 28), to which the Plaintiff has responded (D.E. 33) and the Defendant has replied (D.E. 34).[1]

---

[1] The Court notes that, in their filings, both parties refer to the case number of this matter as "1:18-cv-01196-STA-egb." While the case was initially assigned to Chief Judge S. Thomas Anderson and Magistrate Judge Edward G. Bryant (D.E. 2), it was reassigned to the undersigned on October 16, 2018, (D.E. 7) and Magistrate Judge Jon A. York on March 13, 2019, (D.E. 20). Thus, the correct case number is 1:18-cv-01196-JDB-jay. Counsel are DIRECTED to utilize this case number on all future filings.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. Prior to March 7, 2017, Plaintiff purchased an insurance policy from Erie covering his residence located at 74 Southwind Drive in Jackson, Tennessee, (the "Property"). On August 25, 2017, he made a claim under the policy, arising from damage allegedly caused by a hail storm that occurred five months earlier on March 9, 2017. Erie asserts that it dispatched an adjuster to the Property to inspect the damage on September 5, 2017, and determined based on the inspection that the roof did not suffer significant damage as a result of hail. Subtracting Plaintiff's $1,000 deductible from its estimate of the cost of repairs, Erie issued to its insured a check in the amount of $122.39 on or about September 11, 2017.

Sometime thereafter, Defendant hired Donan Engineering Co., Inc. in Louisville, Kentucky, ("Donan") to perform an inspection of Cox's roof. The stated purpose of the study was to "determine whether the roof's shingles [were] damaged as a result of hail and the cause of damage to the low-slope roof." (D.E. 30-4 at PageID 177.)

On January 5, 2018, Forensic Engineer Steven Pace, P.E., issued a report ("Donan Report I"). (D.E. 30-4.) He noted that the roof was covered with luxury shingles and an ethylene propylene diene monomer ("EPDM") membrane. He related that he was advised during his investigation by individuals present on Cox's behalf, including a representative of Affordable Construction in Jackson, Tennessee, that the house was impacted by hail, that granules were missing from the shingle tabs in areas where there was a void beneath the tabs, and that no fractured shingle tabs had been found. He was also told that patches had been placed on the EPDM membrane along tears from tree limb impacts.

Donan Report I concluded as follows:

> Controlled laboratory testing has found that hail smaller than 1 1/4 inches in diameter lacks sufficient mass to cause a loss in functionality or integrity to dimensional-style, fiberglass-mat asphalt shingles. Luxury-style shingles are typically constructed equal to or better than dimensional-style shingles.
>
> Controlled laboratory testing has found that hail smaller than 2 inches in diameter lacks sufficient mass to cause a loss in functionality or integrity to EPDM roof membranes.
>
> Hail up to 3/4 inch in diameter impacted this house on March 9, 2017, and was of insufficient size to damage the shingles.
>
> The roof's shingles and EPDM membrane are not damaged as a result of hail.
>
> The spots of granule loss on the roof's shingles are the result of balding and are not the result of a hail event.
>
> The tears along the wrinkles are the result of age related deterioration and are not the result of wind and/or hail.

(*Id.* at PageID 183.) Pace estimated the size of the hailstones based on dents in the gutter downspouts, which were consistent, he opined, with impacts up to a three-quarter inch in diameter. In addition to the shingles, it was the engineer's opinion that hail of the estimated size was not sufficient to damage the EPDM membrane.

On behalf of the Plaintiff, Chris Williamson of Affordable Construction retained Prosser & Associates of Henry, Tennessee, ("Prosser") to inspect the Property and prepare an engineer's report. Prosser issued its report on April 18, 2018, (the "Prosser Report"), which indicated "hail strikes to the roof on all slopes, missing shingles due to wind forces, . . . creasing present due to wind uplift," and "overall roof shingle loss of granulization from either minor size hail which struck the roof during the storm or minor sized storm debris which generally would accompany storms with hail and winds of extreme velocity," as well as damage to the roof membrane, brick and driveway coatings, and window cladding. (D.E. 30-5 at PageID 203-04.) The Plaintiff's engineer recommended that these damaged areas be replaced. The report was submitted to the

3

insurer. Erie informed Cox in letters dated June 1, 5, and 11, 2018, that the engineer's report had been received and was under review. (D.E. 30-6.)

The Defendant again engaged Donan, this time, according to Erie, to review the Prosser Report and determine whether the issues raised therein warranted a change in its original opinion. In a second report dated June 28, 2018, ("Donan Report II"), Pace, after performing a "desk review" of the Prosser Report, concluded as follows:

> All evidence Mr. Prosser presented was known and readily apparent at the time of Donan's study. Donan's original scope did not include the determination of the shingle[s'] reparability or whether the roof's shingles were damaged as a result of wind. Mr. Prosser's comments on reparability are not founded on any standardized in-situ test. Mr. Prosser did not include any observations or evidence of wind damaged shingles on this roof. The findings and conclusions of Donan's original report are unchanged following a review of the report by Mr. Prosser. The roof coverings of this house are not damaged as a result of wind and/or hail.

(D.E. 30-7 at PageID 221.) With respect to the brick and driveway coatings, Pace opined that

> [h]ail not capable of damaging structurally competent dimensional-style asphalt shingles [is] certainly not capable of damaging brick or driveway coatings. No evidence of hail large enough to damage brick or driveway coating was provide[d] in the [Prosser Report]. Any missing surface from the driveway or brick is the result of spalling and not of hail.

(*Id.*) The engineer further stated that a broken window depicted in a photograph appended to the Prosser Report was "not consistent with a hail impact from the hail sizes confirmed at th[e] site." (*Id.*)

On July 11, 2018, Erie notified Plaintiff by letter that it had completed its review of the Prosser Report and determined that its initial decision would stand. (D.E. 30-8.) Some six days later, Cox sent an email to Erie alleging its bad faith and informing the insurer that he would seek a legal remedy. (D.E. 30-9.)

## STANDARD OF REVIEW

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at the trial, [courts] must determine whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict." *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (internal quotation marks omitted). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material fact, the non[]moving party must then come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted). "In deciding whether summary judgment [is] appropriate, the court views the evidence in the light most favorable to the nonmoving party." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019) (quoting *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014)). "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action rather than a disfavored procedural shortcut." *Fed. Deposit Ins. Corp. v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 327 (1986)) (internal quotation marks omitted).

## JURISDICTION

The instant case was brought in this Court in accordance with 28 U.S.C. § 1332, which bestows original jurisdiction in the district courts for all matters where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). The Plaintiff is a resident of the State of Tennessee and the Defendant is incorporated in the State of Pennsylvania. The complaint seeks $500,000 in both compensatory and punitive damages, as well as a twenty-five percent bad faith penalty. In "diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019) (quoting *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000)). Accordingly, the Court has original jurisdiction over this action.

## ARGUMENTS OF THE PARTIES AND ANALYSIS

Defendant seeks herein dismissal of Cox's claims under the TCPA and for bad faith. In response, the nonmovant acknowledges that dismissal of the TCPA claim is appropriate. The claim is therefore DISMISSED. The Court's focus will at this point turn to the issue of bad faith.

Plaintiff contends that Erie's decision to, in his view, drastically undervalue the insurance claim amounted to statutory bad faith under Tennessee law. Tennessee Code Annotated § 56-7-105 permits a court to impose a penalty not exceeding twenty-five percent on an insurer that refuses to pay a loss in bad faith. Bad faith arises from "a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006) (quoting *Goings v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 847, 849 (Tenn. Ct. App. 1972)).

To be successful in a § 56-7-105 action, a plaintiff must establish the following: (1) "the policy of insurance must, by its terms, have become due and payable," (2) "a formal demand for payment must have been made," (3) "the insured must have waited [sixty] days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the [sixty] days)," and (4) "the refusal to pay must not have been in good faith." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360-61 (6th Cir. 2018) (quoting *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)), *petition for cert. docketed* (No. 19-4) (U.S. June 28, 2019). The parties' dispute on summary judgment centers exclusively on the fourth element.

Not every refusal to pay a loss necessarily arises from bad faith. *Bowery v. Berkshire Life Ins. Co. of Am.*, No. 3:11-CV-03, 2013 WL 1497339, at *9 (E.D. Tenn. Apr. 11, 2013) (citing *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844, 852 (Tenn. Ct. App. 1982)). "An insurer is entitled to rely upon available defenses and refuse payment if there are substantial legal grounds that the policy does not afford coverage for the alleged loss." *Lindenberg*, 912 F.3d at 361 (quoting *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004)) (internal quotation marks omitted); *see also Powell v. Nationwide Mut. Fire Ins. Co.*, No. 3:16-cv-0375-SHM, 2017 WL 7050057, at *3 (M.D. Tenn. Sept. 19, 2017) ("A bad faith claim for a refusal to pay cannot be sustained when the insurer's refusal to pay rests on legitimate and substantial legal grounds."). "An investigation can be a legitimate ground for refusal." *Nylander v. Unum Life Ins. Co. of Am.*, 309 F. Supp. 3d 526, 544 (M.D. Tenn. 2018). "Ordinary care and diligence in the investigation require that the insurer investigate the claim to such an extent that it can render honest judgment regarding whether the claim should be settled." *Id.* "The insurer's reliance on the investigation should also be reasonable." *Id.* "Mere negligence is not sufficient to impose liability for failure to settle." *Johnson*, 205 S.W.3d at 371. However, "negligence may be considered along with

7

other circumstantial evidence to suggest an indifference toward an insured's interest." *Id.* "[A]n insurer's mistaken judgment is not bad faith if it was made honestly and followed an investigation performed with ordinary care and diligence." *Id.* "The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim." *Id.*

The Defendant asserts that, following multiple investigations, it had a good faith basis for its handling of Cox's claim. As outlined above, after the adjuster made his determination and payment was made, Erie, apparently of its own accord, hired Donan to conduct an investigation in order to ensure its decision had been correct. When the insurer received the Prosser Report, it again engaged Donan, again of its own accord, to take a second look at its original report. Donan issued a second report, in which it addressed, and discounted, the issues raised by the Plaintiff's engineer. Defendant argues that, even if its coverage decision may have been incorrect, it did not act in bad faith.

In response, Plaintiff maintains that Defendant's continued reliance on Donan's opinions despite what he considers to be inaccuracies and omissions with respect to the brick and driveway coatings and the broken window, as well as contradictory findings by Prosser relating to the roof and membrane, clearly demonstrates bad faith.

Any claimed inaccuracy as to the broken glass appears, in the Court's view, immaterial, insofar as a bad faith claim is concerned, as the Plaintiff has pointed to no statement by his engineer that the window was broken by the storm. In addition, although Donan Report I did not mention the brick and driveway coatings, the stated scope of that report was damage to the roof. Upon its review of the Prosser Report at Erie's request, Donan considered Prosser's opinions regarding the

damage to the brick and driveway coatings and the roof and membrane and stated that its initial findings and conclusions were unchanged.

As Cox points out in his brief, the conclusions of Donan and Prosser are "completely juxtaposed." (D.E. 33 at PageID 257.) The Court does not disagree. However, Plaintiff has not, as he must, presented proof that Erie's investigation was unreasonable, dishonest, or fundamentally illegitimate. *See Nylander*, 309 F. Supp. 3d at 545 ("While [plaintiff] has advanced the argument that the [d]efendants' investigation was insufficient and in the end substantively misguided, she has not, as is her burden, put forth evidence to demonstrate that it was somehow unreasonable, dishonest, negligently protracted, or fundamentally illegitimate."). The results of two investigations by an engineer hired by Erie, culminating in Donan Report I and II, supported an honest and good faith belief that the extent of the storm damage to the Property was not as extensive as the homeowner claimed. Moreover, Defendant's prompt engagement of an engineer to investigate the claim on two occasions after payment had been made without, it appears from the record, being requested to do so, as well as its communications with the Plaintiff advising that its review of the claim was proceeding, indicate that Defendant was not consciously indifferent to Plaintiff's interest. Therefore, there is insufficient evidence before the Court, on this record, to submit the issue of bad faith to the jury. *See Lance v. Owner's Ins. Co.*, No. E2015-00274-COA-R3-CV, 2016 WL 3092818, at *12-13 (Tenn. Ct. App. May 25, 2016) (where insurer immediately began an investigation which supported its honest and good faith belief that the insured was involved in loss, there was insufficient proof to send the issue of bad faith to the finder of fact), *appeal denied* (Oct. 20, 2016). Plaintiff will have an opportunity to challenge any weaknesses in Defendant's reports at trial, but he must do so without a chance at a bad faith penalty.

*CONCLUSION*

For the reasons set forth herein, the Defendant's motion for partial summary judgment on Plaintiff's claims under the TPCA and for bad faith is GRANTED, and the claims are DISMISSED.

IT IS SO ORDERED this 4th day of December 2019.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE